# Supreme Court of Florida

_____

No. SC12-2234
_____

## IN RE: AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR (BIENNIAL REPORT).

[May 29, 2014]
### REVISED OPINION

PER CURIAM.

The opinion dated March 27, 2014, is withdrawn and this revised opinion is substituted in its place.[1]

This matter is before the Court on the petition of The Florida Bar proposing amendments to the Rules Regulating the Florida Bar. See R. Regulating Fla. Bar 1-12.1. We have jurisdiction. See art. V, § 15, Fla. Const.

The petition, which proposes amendments to existing rules, was approved by the Board of Governors. Formal notice of the proposed amendments was published in the September 1, 2012, issue of The Florida Bar News. The notice

---

1. On April 8, 2014, The Florida Bar filed a "Motion for Clarification and Request to Modify the Effective Date of Rule 10-3.1." We hereby grant the motion for clarification and request to modify the effective date by this opinion.

was also published on The Florida Bar's website. The Bar did not receive any comments after the proposals were published for comment. Thereafter, on October 18, 2012, the Bar filed the proposed amendments with the Court. Only one comment was filed with the Court.[2]

The Bar petitions to amend Rules Regulating the Florida Bar 1-3.7 (Reinstatement to Membership); 1-7.3 (Membership Fees); 2-7.3 (Creation of Sections and Divisions); 3-4.1 (Notice and Knowledge of Rules; Jurisdiction Over Attorneys of Other States and Foreign Countries); 3-6.1 (Generally); 3-7.1 (Confidentiality); 3-7.2 (Procedures Upon Criminal or Professional Misconduct; Discipline Upon Determination or Judgment of Guilt of Criminal Misconduct; Discipline on Removal From Judicial Office); 3-7.10 (Reinstatement and Readmission Procedures); 4-1.6 (Confidentiality of Information); 4-1.7 (Conflict of Interest; Current Clients); 4-1.9 (Conflict of Interest; Former Client); 4-1.10 (Imputation of Conflicts of Interest; General Rule); 4-2.4 (Lawyer Serving as Third-Party Neutral); 4-3.4 (Fairness to Opposing Party and Counsel); 4-4.2 (Communication With Person Represented by Counsel); 4-6.5 (Voluntary pro bono plan); 4-8.6 (Authorized Business Entities); 5-1.2 (Trust Accounting Records and

---

2. The comment, filed by the Association of Corporate Counsel, supports the proposals for chapters 12 and 17 of the Rules Regulating the Florida Bar that would permit in-house legal counsel to volunteer to provide pro bono legal services.

Procedures); 10-3.1 (Generally); 10-7.2 (Proceedings For Indirect Criminal Contempt); 12-1.2 (Definitions); 12-1.3 (Activities); 12-1.4 (Supervision and limitations); 12-1.5 (Certification); 12-1.6 (Withdrawal of certification); 12-1.7 (Discipline); 14-1.2 (Jurisdiction); 17-1.3 (Activities); 20-2.1 (Generally); 20-3.1 (Requirements for Registration); 20-4.1 (Generally); and 20-6.1 (Generally). After considering the petition, the Court adopts The Florida Bar's proposals,[3] except as follows.

The Bar proposes amending Rule 3-6.1 (Employment of Certain Lawyers or Former Lawyers; Generally) by adding new subdivision (d)(4) to prohibit suspended attorneys and former attorneys who have been disbarred, or whose disciplinary resignations or revocations have been allowed, from representing clients in administrative proceedings and before administrative agencies which allow nonlawyer agents or "qualified representatives" to represent clients in certain circumstances. Although we appreciate the Bar's diligent work on this issue, we do not adopt the proposal because we do not have the authority to prohibit a lawyer from doing non-legal work or engaging in lawful activities.

---

3. We adopt the proposal for Rule 1-3.7(g) (Reinstatement to Membership; Inactive Members), but direct the Bar to study the rule and determine whether more extensive requirements should be imposed for those lawyers who have been inactive and not practicing law for five years or more.

Next, the Bar proposes amending Rule 4-1.7(d) (Conflict of Interest; Current Clients; Lawyers Related by Blood or Marriage) to clarify that family relationships that must be considered as creating conflicts between lawyers include relationships by blood or marriage. We agree with the proposal, but modify it to also include lawyers who are related by adoption. As we state in the comment to the rule, "The purpose of Rule 4-1.7(d) is to prohibit representation of adverse interests, unless informed consent is given by the client, by a lawyer related to another lawyer by blood, adoption, or marriage as a parent, child, sibling, or spouse so as to include those with biological or adopted children and within relations by marriage those who would be considered in-laws and stepchildren and stepparents." We adopt the rule as modified herein. In addition, we direct the Bar to study the rule further and consider whether the current categories should be broadened beyond parent, child, sibling, and spouse to include other significant relationships.

Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. Deletions are indicated by struck-through type, and new language is indicated by underscoring. The comments are offered for explanation and guidance only and are not adopted as an official part of the rules. The amendments to rule 10-3.1(a) shall become effective on July 1, 2015, at 12:01 a.m. The remainder of the amendments shall become effective on June 1, 2014, at 12:01 a.m.

It is so ordered.

POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in result.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, Mary Ellen Bateman, Ethics and Unlicensed Practice Division Director, Elizabeth Clark Tarbert, Ethics Counsel, and Lori S. Holcomb, Director, Client Protection, The Florida Bar, Tallahassee, Florida,

for Petitioner

Amar D. Sarwal and Evan P. Schultz, on behalf of the Association of Corporate Counsel, Washington, D.C.,

Responding with comments

**APPENDIX**

**RULES REGULATING THE FLORIDA BAR
CHAPTER 1 GENERAL
1-3. MEMBERSHIP
RULE 1-3.7 REINSTATEMENT TO MEMBERSHIP**

(a) **Eligibility for Reinstatement.** Members who have retired or been delinquent for a period of time not in excess of 5 years are eligible for reinstatement under this rule. Time ~~shall~~will be calculated from the day of the retirement or delinquency.

Inactive members may also seek reinstatement under this rule.

(b) **Petitions Required.** A member seeking reinstatement must file a petition with the executive director setting forth the reason for inactive status, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted. The petition ~~shall~~must be on a form approved by the board of governors and the petitioner ~~shall~~will furnish such information on such form as the board of governors may require. The petition ~~shall~~must be accompanied by a nonrefundable reinstatement fee of $150 and payment of all arrearages unless adjusted by the executive director with concurrence of the executive committee for good cause shown. Inactive members ~~shall not be~~are not required to pay the reinstatement fee. No member ~~shall~~will be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law or if the member is delinquent ~~in compliance~~ with the continuing legal education or basic skills course requirements.

If the executive director is in doubt as to approval of a petition the executive director may refer the petition to the board of governors for its action. Action of the executive director or board of governors denying a petition for reinstatement may be reviewed upon petition to the Supreme Court of Florida.

(c) **Members Who Have Retired or Been Delinquent for Less Than 5 Years, But More Than 3 Years.** Members who have retired or been delinquent for less than 5 years, but more than 3 years, ~~shall~~must have completed 10 hours of continuing legal education courses for each year or portion ~~thereof~~of a year that the member had retired or was deemed delinquent.

(d) **Members Who Have Retired or Been Delinquent for 5 Years or More.** Members who have retired or have been deemed delinquent for a period of

5 years or longer ~~shall~~will not be reinstated under this rule and must be readmitted upon application to and approval by the Florida Board of Bar Examiners.

**(e)  Members Who Have Permanently Retired.**  Members who have permanently retired ~~shall~~will not be reinstated under this rule.

**(f)  Members Delinquent 60 Days or Less.**  Reinstatement from membership fees delinquency accomplished within 60 days from the date of delinquency ~~shall be deemed to~~relates back to the date before the delinquency. Any member reinstated within the 60-day period ~~shall not be~~is not subject to disciplinary sanction for practicing law in Florida during that time.

**(g)  Inactive Members.**  Inactive members may be reinstated to membership in good standing by petition filed with the executive director, in the form and as provided in (b) above, except:

(1)  If the member has been inactive for greater than 5 years, ~~but~~ has been authorized to practice law in another jurisdiction, and either actively practiced law in ~~another~~that jurisdiction ~~for the entire period of time~~ or held a position that requires a license as ~~an attorney~~a lawyer for the entire period of time, the member ~~shall~~will be required to complete the Florida Law Update continuing legal education course as part of continuing legal education requirements.

(2)  If the member has been inactive for greater than 5 years and ~~has been authorized to but has not actively practiced law in another jurisdiction or held a position that requires a license as an attorney for the entire period of time~~does not meet the requirements of subdivision (1), the member ~~shall~~will be required to complete the basic skills course requirement and the 30-hour continuing legal education requirement.

(3)  An inactive member ~~shall not be~~is not eligible for reinstatement until all applicable continuing legal education requirements have been completed and the remaining portion of membership fees for members in good standing for the current fiscal year have been paid.

# 1-7.  MEMBERSHIP FEES AND FISCAL CONTROL
## RULE 1-7.3 MEMBERSHIP FEES

(a)  **Membership Fees Requirement.**  On or before July 1 of each year, every member of The Florida Bar, except those members who have retired, resigned, been disbarred, or been classified as inactive members pursuant to rule 3-7.13, ~~shall~~must pay annual membership fees to The Florida Bar in the amount ~~set by the budget, provided that the board of governors shall not fix the membership fees at more than~~of $265 per annum.  ~~At the time of the payment of membership fees e~~Every member of The Florida Bar ~~shall~~must pay the membership fee and concurrently file ~~with the executive director~~ a fee statement ~~setting forth~~with any information ~~that may be required by~~ the board of governors requires.

(b)  **Prorated Membership Fees.**  Membership fees will be prorated for anyone~~Persons~~ admitted to The Florida Bar ~~subsequent to~~after July 1 of any fiscal year ~~shall pay the annual membership fees for that fiscal year~~.  The prorated amount will be based on the ~~basis of the~~ number of full calendar months ~~of~~remaining in the fiscal year ~~remaining~~ at the time of their admission.
~~Failure to pay~~Unpaid prorated membership fees ~~shall result in the amount of such prorated~~will be added to the next annual membership fees ~~being added to the next annual membership fees billing~~bill with no penalty to the member ~~without penalty~~.  The Florida Bar must receive the combined prorated and annual membership fees payment ~~must thereafter be received by The Florida Bar,~~ on or before August 15 of the first full year fees are due unless the member elects to pay by installment ~~under this rule~~.

(c)  **Installment Payment of Membership Fees.**  Members of The Florida Bar may elect to pay annual membership fees in 3 equal installments as follows:

(1)  in the second and third year of their admission to The Florida Bar;~~ or~~

(2)  if the member is employed by a federal, state, or local government in a non-elected position that requires the individual to maintain membership in good standing within The Florida Bar~~.~~; or

(3)  if the member is experiencing an undue hardship.

A member~~'s notice of election to~~ must notify The Florida Bar of the intention to pay membership fees in installments ~~under this rule and the~~.  The first installment payment ~~thereunder~~ must be postmarked no later than August 15.  The

second and third installment payments must be postmarked no later than November 1 and February 1, respectively.

Second and/or third installment payments postmarked after their respective due date(s) ~~shall be~~are subject to a one-time late charge of $50 ~~per fiscal year, which shall~~.  The late charge must accompany the final payment ~~unless adjusted by the~~.  The executive director with concurrence of the executive committee ~~for good cause shown~~may adjust the late charge.

The executive director ~~shall~~will send written notice ~~by registered or certified mail ~~to the last official bar address of each member who~~se membership fees and late fees have~~ has not ~~been ~~paid ~~under this rule~~membership fees and late fees by February 1.  Written notice may be by registered or certified mail, or by return receipt electronic mail.  The member will be a delinquent member if ~~Upon failure to pay ~~membership fees and ~~any ~~late charges ~~under this rule~~are not paid by March 15~~, unless adjusted by the~~.  The executive director with concurrence of the executive committee may adjust these fees or due date for good cause ~~shown, the member shall be a delinquent member~~.

Each member who elects to pay annual membership fees in installments ~~under this rule ~~may be charged an additional administrative fee set by the board of governors to defray the costs of this activity~~ as set by the Board of Governors~~.

**(d) Election of Inactive Membership.**  A member in good standing may elect ~~by August 15 of a fiscal year ~~to be classified as an inactive member.  ~~Such election shall be made only by indication of such choice~~This election must be indicated on the annual membership fees statement ~~and payment of the prescribed annual membership fees~~and received by The Florida Bar by August 15.  ~~Failure to make the initial election by August 15 shall constitute a waiver of the~~If the annual membership fees statement is received after August 15, the member's right to ~~the election~~inactive status is waived until the next fiscal year.  ~~Once a member has properly elected to be classified as an inactive member, such~~Inactive classification ~~shall~~will continue from fiscal year to fiscal year until ~~such time as ~~the member is reinstated as a member in good standing ~~as elsewhere provided in these rules~~who is eligible to practice law in Florida.  The election of inactive status ~~shall be~~is subject to the restrictions and limitations ~~elsewhere ~~provided elsewhere in these rules.

Membership fees for inactive members~~ shall be set by the board of governors in an amount not to exceed~~ are $175 per annum.

**(e) Late Payment of Membership Fees.**  Payment of annual membership fees must be postmarked no later than August 15.  Membership fees payments postmarked after August 15 ~~shall~~must be accompanied by a late charge of $50 ~~unless adjusted by the executive director with concurrence of the executive~~

committee for good cause shown.  The executive director ~~shall~~will send written notice ~~by registered or certified mail~~ to the last official bar address of each member whose membership fees have not been paid by August 15.  Written notice may be by registered or certified mail, or by return receipt electronic mail.  The member is considered a delinquent member upon~~Upon~~ failure to pay membership fees and any late charges by September 30, unless adjusted by the executive director with concurrence of the executive committee ~~for good cause shown, the member shall be a delinquent member~~.

**(f)  Membership Fees Exemption for Activated Reserve Members of the Armed Services.**  Members of The Florida Bar engaged in reserve military service in the Armed Forces of the United States who are called to active duty for 30 days or more during the bar's fiscal year ~~shall be~~are exempt from the payment of membership fees ~~required under this rule~~.  ~~For purposes of this rule, the~~The Armed Forces of the United States includes the United States Army, Air Force, Navy, Marine Corps, Coast Guard, as well as the Army National Guard, Army Reserve, Navy Reserve, Marine Corps Reserve, the Air National Guard of the United States, the Air Force Reserve, and the Coast Guard Reserve.  Requests for an exemption ~~shall~~must be made within 15 days before the date that membership fees are due each year or within 15 days of activation to duty of a reserve member.  To the extent membership fees were paid despite qualifying for this exemption, such membership fee ~~shall~~will be reimbursed by The Florida Bar within 30 days of receipt of a member's request for exemption.  Within 30 days of leaving active duty status, the member ~~shall~~must report to The Florida Bar that he or she is no longer on active duty status in the United States Armed Forces.

## CHAPTER 2.  BYLAWS OF THE FLORIDA BAR
## 2-7.  SECTIONS AND DIVISIONS
## BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS

Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable.

**(a)  Sections.**  The following sections of The Florida Bar have been created by the board of governors:

|      |                                        |
|------|----------------------------------------|
| (1)  | Administrative Law Section;             |
| (2)  | Alternative Dispute Resolution Section; |
| (~~2~~3) | Appellate Practice Section;          |

| | |
|---|---|
| (34) | Business Law Section; |
| (45) | City, County and Local Government Law Section; |
| (56) | Criminal Law Section; |
| (67) | Elder Law Section; |
| (78) | Entertainment, Arts, and Sports Law Section; |
| (89) | Environmental and Land Use Law Section; |
| (910) | Equal Opportunities Law Section; |
| (1011) | Family Law Section; |
| (1112) | General Practice, Solo and Small Firm Section; |
| (1213) | Government Lawyer Section; |
| (1314) | Health Law Section; |
| (1415) | International Law Section; |
| (1516) | Labor and Employment Law Section; |
| (1617) | Public Interest Law Section; |
| (1718) | Real Property, Probate, and Trust Law Section; |
| (1819) | Tax Section; |
| (1920) | Trial Lawyers Section; and |
| (2021) | Workers' Compensation Section. |

**(b)** [**No Change**]


### CHAPTER 3.  RULES OF DISCIPLINE
### SUBCHAPTER 3-4 STANDARDS OF CONDUCT
### RULE 3-4.1 NOTICE AND KNOWLEDGE OF RULES; JURISDICTION OVER ATTORNEYSLAWYERS OF OTHER STATES AND FOREIGN COUNTRIES

Every member of The Florida Bar and every attorneylawyer of another state or foreign country who provides or offers to provide any legal services in this state is within the jurisdiction and subject to the disciplinary authority of this court and its agencies under this rule and is charged with notice and held to know the provisions of this rule and the standards of ethical and professional conduct prescribed by this court.  Jurisdiction over an attorneya lawyer of another state who is not a member of The Florida Bar shall beis limited to conduct as an attorneya lawyer in relation to the business for which the attorneylawyer was permitted to practice in this state and the privilege in the future to practice law in the state of Florida.  When The Florida Bar disciplines a lawyer that the bar is aware has bar membership in a European Union (E.U.) nation, the bar will notify the appropriate E.U. representative.  The bar will use forms adopted by the Council of Laws and

- 11 -

Bar Societies of Europe (CCBE) and the Conference of Chief Justices of the United States.

### 3-6. EMPLOYMENT OF CERTAIN ~~ATTORNEYS~~LAWYERS OR FORMER ~~ATTORNEYS~~LAWYERS
### RULE 3-6.1 GENERAL~~LY~~

**(a) Authorization and Application.** Except as limited in this rule, persons or entities providing legal services may employ suspended lawyers and former lawyers who have been disbarred or whose disciplinary resignations or disciplinary revocations have been granted by the Florida Supreme Court [for purposes of this rule such lawyers and former lawyers are referred to as "individual(s) subject to this rule"] to perform those services that may ethically be performed by nonlawyers employed by authorized business entities.

An individual subject to this rule ~~shall be~~is considered ~~as~~ employed by an entity providing legal services if the individual is a salaried or hourly employee, volunteer worker, or an independent contractor providing services to the entity.

**(b) Employment by Former Subordinates Prohibited for a Period of 3 Years.** An individual subject to this rule may not, for a period of 3 years from the entry of the order pursuant to which the suspension, ~~disciplinary resignation,~~ disciplinary revocation, or disbarment became effective, or until the individual is reinstated or readmitted to the practice of law, whichever occurs sooner, be employed by or work under, the supervision of another lawyer who was supervised by the individual at the time of or subsequent to the acts giving rise to the order.

**(c) Notice of Employment Required.** Before employment commences, the entity ~~shall~~must provide The Florida Bar with a notice of employment and a detailed description of the intended services to be provided by the individual subject to this rule.

**(d) Prohibited Conduct.**

(1) *Direct Client Contact*. Individuals subject to this rule ~~shall~~must not have direct contact with any client. Direct client contact does not include the participation of the individual as an observer in any meeting, hearing, or interaction between a supervising ~~attorney~~lawyer and a client.

(2) *Trust Funds or Property*.  Individuals subject to this rule ~~shall~~must not receive, disburse, or otherwise handle trust funds or property.

(3) *Practice of Law*.  Individuals subject to this rule ~~shall~~must not engage in conduct that constitutes the practice of law and such individuals ~~shall~~must not hold themselves out as being eligible to do so.

**(e) Quarterly Reports by Individual and Employer Required.**  The individual subject to this rule and employer ~~shall~~must submit sworn information reports to The Florida Bar.  Such reports ~~shall~~must be filed quarterly, based on the calendar year, and include statements that no aspect of the work of the individual subject to this rule has involved the unlicensed practice of law, that the individual subject to this rule has had no direct client contact, that the individual subject to this rule did not receive, disburse, or otherwise handle trust funds or property, and that the individual subject to this rule is not being supervised by ~~an attorney~~a lawyer whom the individual subject to this rule supervised within the 3 years immediately previous to the date of the suspension, disbarment, ~~or~~ disciplinary resignation, or disciplinary revocation.


**3-7. PROCEDURES**
**RULE 3-7.1 CONFIDENTIALITY**

**(a) Scope of Confidentiality.**  All matters including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar.  All of those matters ~~shall be~~are confidential and ~~shall~~will not be disclosed except as provided ~~herein~~in these rules.  When disclosure is permitted under these rules, it ~~shall~~will be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules.

Unless otherwise ordered by this court or the referee in proceedings under these rules, nothing in these rules ~~shall~~will prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules, or from disclosing any documents or correspondence served on or provided to those persons.

(1) *Pending Investigations*.  Disciplinary matters pending at the initial investigatory and grievance committee levels ~~shall be~~are treated as confidential by The Florida Bar, except as provided in rules 3-7.1(e) and (k).

(2)  *Minor Misconduct Cases*.  Any case in which a finding of minor misconduct has been entered by action of the grievance committee or board shall beis public information.

(3)  *Probable Cause Cases*.  Any disciplinary case in which a finding of probable cause for further disciplinary proceedings has been entered shall beis public information.  For purposes of this subdivision a finding of probable cause shall be is deemed to have been made in those cases authorized by rule 3-3.2(a), for the filing of a formal complaint without the prior necessity of a finding of probable cause.

(4)  *No Probable Cause Cases*.  Any disciplinary case that has been concluded by a finding of no probable cause for further disciplinary proceedings shall beis public information.

(5)  *Diversion or Referral to Grievance Mediation Program*.  Any disciplinary case that has been concluded by diversion to a practice and professionalism enhancement program or by referral to the grievance mediation program shall beis public information upon the entry of such a recommendation.

(6)  *Contempt Cases*.  Contempt proceedings authorized elsewhere in these rules shall beare public information even though the underlying disciplinary matter is confidential as defined in these rules.

(7)  *Incapacity Not Involving Misconduct*.  Proceedings for placement on the inactive list for incapacity not involving misconduct shall beare public information upon the filing of the petition with the Supreme Court of Florida.

(8)  *Petition for Emergency Suspension or Probation*.  Proceedings seeking a petition for emergency suspension or probation shall beare public information.

(9)  *Proceedings on Determination or Adjudication of Guilt of Criminal Misconduct*.  Proceedings on determination or adjudication of guilt of criminal misconduct, as provided elsewhere in these rules, shall beare public information.

- 14 -

(10) *Professional Misconduct in Foreign Jurisdiction*. Proceedings based on disciplinary sanctions entered by a foreign court or other authorized disciplinary agency, as provided elsewhere in these rules, ~~shall be~~are public information.

(11) *Reinstatement Proceedings*. Reinstatement proceedings, as provided elsewhere in these rules, ~~shall be~~are public information.

(12) *Disciplinary Resignations*. Proceedings involving petitions for disciplinary resignation, as provided elsewhere in these rules, ~~shall be~~are public information.

**(b) Public Record.** The public record ~~shall~~ consist_s_ of the record before a grievance committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, recordings, and/or transcripts of hearings furnished to, served on, or received from the respondent or the complainant.

**(c) Circuit Court Proceedings.** Proceedings under rule 3-3.5 ~~shall be~~are public information.

**(d) Limitations on Disclosure.** Any material provided to The Florida Bar that is confidential under applicable law ~~shall~~will remain confidential and ~~shall~~will not be disclosed except as authorized by the applicable law. If this type of material is made a part of the public record, that portion of the public record may be sealed by the grievance committee chair, the referee, or the Supreme Court of Florida.

The procedure for maintaining the required confidentiality ~~shall be as~~is set forth in subdivision (m) below.

**(e) Response to Inquiry.** Authorized representatives of The Florida Bar ~~shall~~will respond to specific inquiries concerning matters that are in the public domain, but otherwise confidential under the rules, by acknowledging the status of the proceedings.

**(f) Notice to Law Firms.** When a disciplinary file is opened the respondent ~~shall~~must disclose to the respondent's current law firm and, if different, the respondent's law firm at the time of the act or acts giving rise to the complaint, the fact that a disciplinary file has been opened. Disclosure ~~shall~~must be in writing and in the following form:

- 15 -

A complaint of unethical conduct against me has been filed with The Florida Bar. The nature of the allegations are _____. This notice is provided pursuant to rule 3-7.1(f) of the Rules Regulating The Florida Bar.

The notice ~~shall~~must be provided within 15 days of notice that a disciplinary file has been opened and a copy of the above notice ~~shall~~must be served on The Florida Bar.

**(g)** [**No Change**]

**(h) Notice to Judges.** Any judge of a court of record upon inquiry of the judge ~~shall~~will be advised and, absent an inquiry, may be advised as to the status of a confidential disciplinary case and may be provided with a copy of documents in the file that would be part of the public record if the case was not confidential. The judge ~~shall~~must maintain the confidentiality of the records and ~~shall~~ not otherwise disclose the status of the case.

**(i) Evidence of Crime.** The confidential nature of these proceedings ~~shall~~does not preclude the giving of any information or testimony to authorities authorized to investigate alleged criminal activity.

**(j) Chemical Dependency and Psychological Treatment.** That ~~an attorney~~a lawyer has voluntarily sought, received, or accepted treatment for chemical dependency or psychological problems ~~shall be~~is confidential and ~~shall~~will not be admitted as evidence in disciplinary proceedings under these rules unless agreed to by the attorney who sought the treatment.

For purposes of this subdivision, ~~an attorney shall be~~a lawyer is deemed to have voluntarily sought, received, or accepted treatment for chemical dependency or psychological problems if the ~~attorney~~lawyer was not under compulsion of law or rule to do so, or if the treatment is not a part of conditional admission to The Florida Bar or of a disciplinary sanction imposed under these rules.

It is the purpose of this subdivision to encourage ~~attorneys~~lawyers to voluntarily seek advice, counsel, and treatment available to ~~attorneys~~lawyers, without fear that the fact it is sought or rendered will or might cause embarrassment in any future disciplinary matter.

**(k)** [**No Change**]

**(l) Disclosure by Waiver of Respondent.** Upon written waiver executed by a respondent, The Florida Bar may disclose the status of otherwise confidential disciplinary proceedings and provide copies of the public record to:

(1) – (2) **[No Change]**

(3) The Florida Bar Board of Legal Specialization and Education and any of its certification committees for the purpose of evaluating the character and fitness of a candidate for board certification or recertification; or

(3<u>4</u>) the governor of the State of Florida for the purpose of evaluating the character and fitness of a nominee to judicial office.

**(m) Maintaining Confidentiality Required by Rule or Law.** The bar will maintain confidentiality of documents and records in its possession and control as required by applicable federal or state law in accordance with the requirements of Fla. R. Jud. Admin. 2.420. It ~~shall~~<u>will</u> be the duty of respondents and other persons submitting documents and information to the bar to notify bar staff that such documents or information contain material that is exempt from disclosure under applicable rule or law and to request that such exempt material be protected and not be considered public record. Requests to exempt from disclosure all or part of any documents or records must be accompanied by reference to the statute or rule applicable to the information for which exemption is claimed.

**RULE 3-7.2 PROCEDURES UPON CRIMINAL OR PROFESSIONAL MISCONDUCT; DISCIPLINE UPON DETERMINATION OR JUDGMENT OF GUILT OF CRIMINAL MISCONDUCT; DISCIPLINE ON REMOVAL FROM JUDICIAL OFFICE**

**(a) Definitions.**

(1) *Judgment of Guilt*. For the purposes of these rules, "judgment of guilt" ~~shall~~ include<u>s</u> only those cases in which the trial court in the criminal proceeding enters an order adjudicating the respondent guilty of the offense(s) charged.

(2) *Determination of Guilt*. For the purposes of these rules, "determination of guilt" ~~shall~~ include<u>s</u> those cases in which the trial court in the criminal proceeding enters an order withholding adjudication of the respondent's guilt

of the offense(s) charged, those cases in which the convicted ~~attorney~~lawyer has entered a plea of guilty to criminal charges, those cases in which the convicted ~~attorney~~lawyer has entered a no contest plea to criminal charges, those cases in which the jury has rendered a verdict of guilty of criminal charges, and those cases in which the trial judge in a bench trial has rendered a verdict of guilty of criminal charges.

(3) *Convicted* ~~Attorney~~*Lawyer*.  For the purposes of these rules, "convicted ~~attorney~~lawyer" ~~shall mean an attorney~~means a lawyer who has had either a determination or judgment of guilt entered by the trial court in the criminal proceeding.

**(b)  Determination or Judgment of Guilt, Admissibility; Proof of Guilt.** Determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any crime under the laws of this state, or under the laws under which any other court making such determination or entering such judgment exercises its jurisdiction, ~~shall be~~is admissible in proceedings under these rules and ~~shall be~~is conclusive proof of guilt of the criminal offense(s) charged for the purposes of these rules.

**(c)  Notice of Institution of Felony Criminal Charges.**  Upon the institution of a felony criminal charge against a member of The Florida Bar by the filing of an indictment or information the member ~~shall~~must within 10 days of the institution of the felony criminal charges notify the executive director of The Florida Bar of such charges.  Notice ~~shall~~ includes a copy of the document(s) evidencing institution of the charges.
If the state attorney whose office is assigned to a felony criminal case is aware that the defendant is a member of The Florida Bar, the state attorney ~~shall~~must provide a copy of the indictment or information to the executive director.

**(d)     Notice of Determination or Judgment of Guilt of Felony Charges.**

(1) *Trial Judge*.  If any such determination or judgment is entered in a court of the State of Florida, the trial judge ~~shall~~must, within 10 days of the date on which the determination or judgment is entered, give notice ~~thereof~~ to the executive director of The Florida Bar and ~~shall~~ include a certified copy of the document(s) on which the determination or judgment was entered.

(2) *Clerk of Court*.  If any such determination or judgment is entered in a court of the State of Florida, the clerk ~~thereof shall~~of that court must, within 10

- 18 -

days of the date on which the determination or judgment is entered, give notice ~~thereof~~ to the executive director and ~~shall~~ include a certified copy of the document(s) on which the determination or judgment was entered.

(3) *State Attorney*.  If the state attorney whose office is assigned to a felony criminal case is aware that the defendant is a member of The Florida Bar, the state attorney ~~shall~~must give notice of the determination or judgment of guilt to the executive director and ~~shall~~ include a copy of the document(s) evidencing such determination or judgment.

**(e)  Notice by Members of Determination or Judgment of Guilt of All Criminal Charges.**  A member of The Florida Bar ~~shall~~must within 10 days of entry of a determination or judgment for any criminal offense, which was entered on or after August 1, 2006, notify the executive director of The Florida Bar of such determination or judgment.  Notice ~~shall~~must include a copy of the document(s) on which such determination or judgment was entered.

**(f)  Suspension by Judgment of Guilt (Felonies).**  Upon receiving notice that a member of the bar has been determined to be or adjudicated guilty of a felony, the bar will file a "Notice of Determination or Judgment of Guilt" <u>or a consent judgment for disbarment or disciplinary revocation</u> in the Supreme Court of Florida.  A copy of the document(s) on which the determination or judgment is based ~~shall~~must be attached to the notice.  Upon the filing of the notice with the Supreme Court of Florida and service of such notice upon the respondent, the respondent ~~shall stand~~is suspended as a member of The Florida Bar as defined in rule 3-5.1(e).

**(g)  Petition to Modify or Terminate Suspension.**  At any time after the filing of a notice of determination or judgment of guilt, the respondent may file a petition with the Supreme Court of Florida to modify or terminate such suspension and ~~shall~~must serve a copy ~~thereof upon~~of the petition on the executive director.  The filing of such petition ~~shall~~will not operate as a stay of the suspension imposed under the authority of this rule.

**(h)  Appointment of Referee.**  Upon the entry of an order of suspension, as provided above, the supreme court ~~shall~~must promptly appoint or direct the appointment of a referee.

(1) *Hearing on Petition to Terminate or Modify Suspension*.  The referee ~~shall~~must hear a petition to terminate or modify a suspension imposed under

this rule within 7 days of appointment and submit a report and recommendation to the Supreme Court of Florida within 7 days of the date of the hearing.  The referee ~~shall~~will recommend termination or modification of the suspension only if the suspended member can demonstrate that the member is not the convicted person or that the criminal offense is not a felony.

(2)  *Hearing on Sanctions*.  In addition to conducting a hearing on a petition to terminate or modify a suspension entered under this rule, the referee ~~shall~~may also hear argument concerning the appropriate sanction to be imposed and file a report and recommendation with the supreme court in the same manner and form as provided in rule 3-7.6(m) of these rules.  The hearing ~~shall~~must be held and a report and recommendation ~~shall be~~filed with the supreme court within 90 days of assignment as referee.

The respondent may challenge the imposition of a sanction only on the grounds of mistaken identity or whether the conduct involved constitutes a felony under applicable law.  The respondent may present relevant character evidence and relevant matters of mitigation regarding the proper sanction to be imposed.  The respondent ~~may~~cannot contest the findings of guilt in the criminal proceedings.  A respondent who entered a plea in the criminal proceedings ~~may be~~is allowed to explain the circumstances concerning the entry of the plea for purposes of mitigation.

The report and recommendations of the referee may be reviewed in the same manner as provided in rule 3-7.7 of these rules.

**(i)  Appeal of Conviction.**  If an appeal is taken by the respondent from the determination or judgment in the criminal proceeding, the suspension ~~shall~~will remain in effect during the appeal.  If on review the cause is remanded for further proceedings, the suspension ~~shall~~will remain in effect until the final disposition of the criminal cause unless modified or terminated by the Supreme Court of Florida as elsewhere provided.

Further, the suspension imposed ~~shall~~will remain in effect until civil rights have been restored and until the respondent is reinstated.

**(j) – (k)  [No Change]**

**(*l*)  Professional Misconduct in Foreign Jurisdiction.**

(1)  *Notice of Discipline by a Foreign Jurisdiction*.  A member of The Florida Bar who has submitted a disciplinary resignation or otherwise

surrendered a license to practice law in lieu of disciplinary sanction, or has been disbarred or suspended from the practice of law by a court or other authorized disciplinary agency of another state or by a federal court ~~shall~~must within 30 days after the effective date of the disciplinary resignation, disbarment or suspension file with the Supreme Court of Florida and the executive director of The Florida Bar a copy of the order or judgment effecting such disciplinary resignation, disbarment or suspension.

(2) *Effect of Adjudication or Discipline by a Foreign Jurisdiction.* On petition of The Florida Bar supported by a copy of a final adjudication by a foreign court or disciplinary authority, the Supreme Court of Florida may issue an order suspending on an emergency basis the member who is the subject of the final adjudication. All of the conditions not in conflict with this rule applicable to issuance of emergency suspension orders elsewhere within these Rules Regulating <u>T</u>he Florida Bar ~~shall be~~<u>are</u> applicable to orders entered under this rule.

**(m) Discipline Upon Removal From Judicial Office.**

(1) *Notice of Removal.* If an order of the Supreme Court of Florida removes a member of The Florida Bar from judicial office for judicial misconduct, the clerk of the supreme court ~~shall~~<u>will</u> forward a copy of the order of removal to the executive director of The Florida Bar.

(2) **[No Change]**

(3) *Admissibility of Order; Conclusive Proof of Facts.* The order of removal ~~shall be~~<u>is</u> admissible in proceedings under these rules and ~~shall be~~<u>is</u> conclusive proof of the facts on which the judicial misconduct was found by the court.

(4) *Determination of Lawyer Misconduct.* The issue of whether the facts establishing the judicial misconduct also support a finding of lawyer misconduct ~~shall be~~<u>are</u> determined by the referee based on the record of the proceedings.

## RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES

(a) **Reinstatement; Applicability.** A lawyer who is ineligible to practice due to a court-ordered disciplinary suspension of 91 days or more or who has been placed on the inactive list for incapacity not related to misconduct may be reinstated to membership in good standing in The Florida Bar and be eligible to practice again pursuant to this rule. The proceedings under this rule are not applicable to any ~~attorney~~lawyer who is not eligible to practice law due to a delinquency as defined in rule 1-3.6 of these rules.

(b) **Petitions; Form and Contents.**

(1) *Filing.* The original petition for reinstatement and 1 copy ~~thereof~~ ~~shall~~must be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy ~~shall~~must be served on Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300.

(2) *Form and Exhibits.* The petition ~~shall~~must be in such form and ~~shall be~~ accompanied by such exhibits as provided for elsewhere in this rule. The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments; disciplinary judgments; copies of income tax returns together with consents to secure original returns; occupation during suspension and employment information ~~in connection therewith~~; financial statements; and statement of restitution of funds that were the subject matter of disciplinary proceedings. In cases seeking reinstatement from incapacity, the petition ~~shall~~must also include copies of all pleadings in the matter leading to placement on the inactive list and all such other matters as may be reasonably required to demonstrate the character and fitness of the petitioner to resume the practice of law.

(c) **Deposit for Cost.** The petition ~~shall~~must be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors ~~shall~~ prescribes to ensure payment of reasonable costs of the proceedings, as provided elsewhere in this rule.

(d) **Reference of Petition For Hearing.** The chief justice ~~shall~~will refer the petition for reinstatement to a referee for hearing; provided, however, that no

- 22 -

such reference shallwill be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary or incapacity proceedings have been paid and restitution has been made.

**(e) Bar Counsel.** When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint bar counsel to represent The Florida Bar in the proceeding. The duties of such attorneys shall belawyers are to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneylawyer, should be considered in passing upon the petition.

**(f) Determination of Fitness by Referee Hearing.** The referee to whom the petition for reinstatement is referred shallmust conduct the hearing as a trial, in the same manner, to the extent practical, as provided elsewhere in these rules. The matter to decide shall beis the fitness of the petitioner to resume the practice of law. In determining the fitness of the petitioner to resume the practice of law, the referee shallwill consider whether the petitioner has engaged in any disqualifying conduct, the character and fitness of the petitioner, and whether the petitioner has been rehabilitated, as further described in this subdivision. All conduct engaged in after the date of admission to The Florida Bar shall beis relevant in proceedings under this rule.

(1) *Disqualifying Conduct.* A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis for denial of reinstatement. The following shall beare considered as disqualifying conduct:

(A) - (O) [**No Change**]

(2) [**No Change**]

(3) *Elements of Rehabilitation.* Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. Any petitioner for reinstatement from discipline for prior misconduct shall beis required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:

(A) - (F) [**No Change**]

- 23 -

(G)  positive action showing rehabilitation by such things as a person's ~~occupation, religion, or~~ community or civic service.  Community or civic service is donated service or activity that is performed by someone or a group of people for the benefit of the public or its institutions.

The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one's community is an essential obligation of members of the bar.

(4)  *Educational Requirements.*

(A)  **[No Change]**

(i)  The petitioner ~~shall~~must have completed at least 10 hours of continuing legal education courses for each year or portion of a year that the petitioner was ineligible to practice.

(ii)  **[No Change]**

(B)  A petitioner who has been ineligible to practice for 5 years or more ~~shall~~will not be reinstated under this rule until the petitioner has re-taken and passed the Florida portions of the Florida Bar Examination and the Multistate Professional Responsibility Examination (MPRE).

**(g)  Hearing; Notice; Evidence.**

(1)  *Notice*.  The referee to whom the petition for reinstatement is referred ~~shall~~will fix a time and place for hearing, and notice ~~thereof shall be given~~will be provided at least 10 days prior to the hearing to the petitioner, to ~~attorneys~~lawyers representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.

(2)  *Appearance*.  Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for the hearings ~~thereon~~.

(3)  *Failure of Petitioner to be Examined*.  For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee

shallwill dismiss the petition for reinstatement unless good cause is shown for such failure.

(4) *Summary Procedure.* If after the completion of discovery bar counsel is unable to discover any evidence on which denial of reinstatement may be based and if no other person provides same, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions thereonfor reinstatement. The stipulation shallmust include a statement of costs as provided elsewhere in these Rules Regulating the Florida Bar.

(5) *Evidence of Treatment or Counseling for Dependency or Other Medical Reasons.* If the petitioner has sought or received treatment or counseling for chemical or alcohol dependency or for other medical reasons that relate to the petitioner's fitness to practice law, the petitioner shallmust waive confidentiality of such treatment or counseling for purposes of evaluation of the petitioner's fitness. The provisions of rule 3-7.1(d) are applicable to information or records disclosed under this subdivision.

**(h) Prompt Hearing; Report.** The referee to whom a petition for reinstatement has been referred by the chief justice shallwill proceed to a prompt hearing, at the conclusion of which the referee shallwill make and file with the Supreme Court of Florida a report that shall includes the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law. The referee shallmust file the report and record in the Supreme Court of Florida.

**(i) Review.** Review of referee reports in reinstatement proceedings shallmust be in accordance with rule 3-7.7.

**(j) Recommendation of Referee and Judgment of the Court.** If the petitioner is found unfit to resume the practice of law, the petition shallwill be dismissed. If the petitioner is found fit to resume the practice of law, the referee shallwill enter a report recommending, and the court may enter an order of, reinstatement of the petitioner in The Florida Bar; provided, however, that the reinstatement may be conditioned upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct that led to the petitioner's suspension of membership in The Florida Bar or conduct that led to the petitioner's incapacity; and further provided, however, if suspension or incapacity of the petitioner has

continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension or incapacity.

**(k) Successive Petitions.** No petition for reinstatement shallmay be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person. In cases of incapacity no petition for reinstatement shallmay be filed within 6 months following an adverse judgment under this rule.

***(l)* Petitions for Reinstatement to Membership in Good Standing.**

(1) **[No Change]**

(2) *Style of Petition.* Petitions shallmust be styled in the Supreme Court of Florida and an original and 1 copy filed therewithwith the court. A copy shallmust be served on Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300.

(3) *Contents of Petition.* The petition shallmust be verified by the petitioner and shall beaccompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner's tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization shallmust be furnished on a separate sheet. The petition shallmust have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shallmust also include the petitioner's statement concerning the following:

(A) - (B) **[No Change]**

(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorneylawyer, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;

(D) – (H)  [**No Change**]

(I)  a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during ~~said~~the period of suspension for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting ~~attorneys~~lawyers, and trial judges;

(J)  a statement as to whether any applications were made during ~~said~~the period of suspension for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and ~~the~~its disposition ~~thereof~~;

(K)  a statement of any procedure or inquiry, during ~~said~~ the period of suspension, covering the petitioner's standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition ~~thereof~~and the name and address of the authority in possession of the record ~~thereof~~;

(L)  a statement as to whether any charges of fraud were made or claimed against the petitioner during ~~said~~the period of suspension, whether formal or informal, together with the dates and names and addresses of persons making such charges;

(M) [**No Change**]

(N)  a statement showing the dates, general nature, and final disposition of every civil action ~~wherein~~in which the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and

(O)  a statement showing what amounts, if any, of the costs assessed against the accused ~~attorney~~lawyer in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.

- 27 -

(4) *Comments on Petition*.  Upon the appointment of a referee and bar counsel, copies of the petition ~~shall~~will be furnished by the bar counsel to local board members, local grievance committees, and to such other persons as are mentioned in this rule.  Persons or groups that wish to respond ~~shall~~must direct their comments to bar counsel.  The proceedings and finding of the referee ~~shall~~will relate to those matters described in this rule and also to those matters tending to show the petitioner's rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.

(5) *Costs Deposit*.  The petition ~~shall~~must be accompanied by a deposit for costs of $500.

**(m)  Costs.**

(1) *Taxable Costs*.  Taxable costs of the proceedings ~~shall~~must include only:

(A) – (I)  **[No Change]**

(2) *Discretion of Referee*.  The referee ~~shall have~~has discretion to award costs and absent an abuse of discretion the referee's award ~~shall~~will not be reversed.

(3) - (4)  **[No Change]**

**(n)  Readmission; Applicability.**  A former member who has been disbarred, disbarred on consent, or whose petition for disciplinary resignation or revocation has been accepted may be admitted again only upon full compliance with the rules and regulations governing admission to the bar.  No application for readmission following disbarment, disbarment on consent, or disciplinary resignation or revocation may be tendered until such time as all restitution and disciplinary costs as may have been ordered or assessed have been paid together with any interest accrued.

(1) *Readmission After Disbarment*.  Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period of time as the court might

determine in the disbarment order.  An order of disbarment that states the disbarment is permanent ~~shall~~precludes readmission to The Florida Bar.

(2)  *Readmission After Disciplinary Resignation or Revocation.*  ~~In the case of a disciplinary resignation, no readmission application may be filed until 3 years after the date of the order of the Supreme Court of Florida that accepted such disciplinary resignation or such additional time as the attorney may have stated in a petition for disciplinary resignation.  No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission.  If an attorney's~~A lawyer's petition for disciplinary resignation or revocation that states that it is without leave to apply for readmission~~, such condition shall~~will preclude any readmission.  A lawyer who was granted a disciplinary resignation or revocation may not apply for readmission until all conditions of the Supreme Court order granting the disciplinary resignation or revocation have been complied with.

## **Comment**

To further illuminate the community service requirements of Rule 3-7.10(f)(3)(G), bar members can take guidance from the Florida Supreme Court's decision in *Florida Board of Bar Examiners re M.L.B.*, 766 So. 2d 994, 998-999 (Fla. 2000).  The court held that rules requiring community service "contemplate and we wish to encourage positive actions beyond those one would normally do for self benefit, including, but certainly not limited to, working as a guardian ad litem, volunteering on a regular basis with shelters for the homeless or victims of domestic violence, or maintaining substantial involvement in other charitable, community, or educational organizations whose value system, overall mission and activities are directed to good deeds and humanitarian concerns impacting a broad base of citizens."

Court decisions dealing with reinstatements and other discipline provide further guidance as to what specific actions meet the test of community service. The court approved dismissal of a petition for reinstatement where the respondent had no community service and had devoted all her time during suspension to raising her young children.  *Fla. Bar v. Tauler*, 837 So. 2d 413 (Fla. 2003).  In a more recent decision, the court did not specifically mention lack of community service in denying reinstatement, but the respondent had shown no evidence of work for others outside his family in his petition.  Respondent's community service consisted solely of taking care of his elderly parents and his small child.  *Fla. Bar v. Juan Baraque*, 43 So. 3d 691 (Fla. 2010).

**(a)  Consent Required to Reveal Information.**  A lawyer ~~shall~~must not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent.

**(b)  When Lawyer Must Reveal Information.**  A lawyer ~~shall~~must reveal such information to the extent the lawyer reasonably believes necessary:

(1) - (2)  **[No Change]**

**(c)  When Lawyer May Reveal Information.**  A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) - (4)  **[No Change]**

(5)  to comply with the Rules ~~of Professional Conduct~~Regulating The Florida Bar.

**(d)**  [No Change]

**(e)  Limitation on Amount of Disclosure.**  When disclosure is mandated or permitted, the lawyer ~~shall~~must disclose no more information than is required to meet the requirements or accomplish the purposes of this rule.

## Comment

The lawyer is part of a judicial system charged with upholding the law.  One of the lawyer's functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.

This rule governs the disclosure by a lawyer of information relating to the representation of a client during the lawyer's representation of the client.  See rule 4-1.18 for the lawyer's duties with respect to information provided to the lawyer by a prospective client, rule 4-1.9(c) for the lawyer's duty not to reveal information relating to the lawyer's prior representation of a former client, and rules 4-1.8(b) and 4-1.9(b) for the lawyer's duties with respect to the use of such information to the disadvantage of clients and former clients.

A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information

relating to the representation. See terminology for the definition of informed consent. This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.

The principle of confidentiality is given effect in 2 related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules ~~of Professional Conduct~~Regulating The Florida Bar or by law. However, none of the foregoing limits the requirement of disclosure in subdivision (b). This disclosure is required to prevent a lawyer from becoming an unwitting accomplice in the fraudulent acts of a client. See also Scope.

The requirement of maintaining confidentiality of information relating to representation applies to government lawyers who may disagree with the policy goals that their representation is designed to advance.

**Authorized disclosure**
[**No Change**]

**Disclosure adverse to client**
The confidentiality rule is subject to limited exceptions. In becoming privy to information about a client, a lawyer may foresee that the client intends serious harm to another person. However, to the extent a lawyer is required or permitted to disclose a client's purposes, the client will be inhibited from revealing facts that would enable the lawyer to counsel against a wrongful course of action. While the public may be protected if full and open communication by the client is encouraged, several situations must be distinguished.

First, the lawyer may not counsel or assist a client in conduct that is criminal or fraudulent.  See rule 4-1.2(d).  Similarly, a lawyer has a duty under rule 4-3.3(a)(4) not to use false evidence.  This duty is essentially a special instance of the duty prescribed in rule 4-1.2(d) to avoid assisting a client in criminal or fraudulent conduct.

Second, the lawyer may have been innocently involved in past conduct by the client that was criminal or fraudulent.  In such a situation the lawyer has not violated rule 4-1.2(d), because to "counsel or assist" criminal or fraudulent conduct requires knowing that the conduct is of that character.

Third, the lawyer may learn that a client intends prospective conduct that is criminal.  As stated in subdivision (b)(1), the lawyer ~~shall~~must reveal information in order to prevent such consequences.  It is admittedly difficult for a lawyer to "know" when the criminal intent will actually be carried out, for the client may have a change of mind.

Subdivision (b)(2) contemplates past acts on the part of a client that may result in present or future consequences that may be avoided by disclosure of otherwise confidential communications.  Rule 4-1.6(b)(2) would now require the ~~attorney~~lawyer to disclose information reasonably necessary to prevent the future death or substantial bodily harm to another, even though the act of the client has been completed.

The lawyer's exercise of discretion requires consideration of such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the lawyer's own involvement in the transaction, and factors that may extenuate the conduct in question.  Where practical the lawyer should seek to persuade the client to take suitable action.  In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to the purpose.

**Withdrawal**
       **[No Change]**

**Dispute concerning lawyer's conduct**
       [**No Change**]

**Disclosures otherwise required or authorized**
       [**No Change**]

**Former client**
       [**No Change**]

## RULE 4-1.7 CONFLICT OF INTEREST; CURRENT CLIENTS

**(a) Representing Adverse Interests.**  Except as provided in subdivision (b), a lawyer ~~shall~~must not represent a client if:

(1) - (2)  **[No Change]**

**(b) Informed Consent.**  Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:

(1) - (4)  **[No Change]**

**(c) Explanation to Clients.**  When representation of multiple clients in a single matter is undertaken, the consultation ~~shall~~must include an explanation of the implications of the common representation and the advantages and risks involved.

**(d) Lawyers Related by Blood, Adoption, or Marriage.**  A lawyer related by blood, adoption, or marriage to another lawyer as parent, child, sibling, or spouse ~~shall~~must not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except ~~upon consent by the client after consultation regarding the relationship~~with the client's informed consent, confirmed in writing or clearly stated on the record at a hearing.

**(e)**  [**No Change**]

## Comment

**Loyalty to a client**
[**No Change**]

**Consultation and consent**
[**No Change**]

**Lawyer's interests**
[**No Change**]

**Conflicts in litigation**

Subdivision (a)(1) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by subdivisions (a), (b), and (c). An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party, or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than 1 co-defendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of subdivisions (b) and (c) are met.

Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation. By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.

A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.

**Interest of person paying for a lawyer's service**
[**No Change**]

**Other conflict situations**
[**No Change**]

**Conflict charged by an opposing party**
[**No Change**]

**Family relationships between lawyers**

Rule 4-1.7(d) applies to related lawyers who are in different firms. Related lawyers in the same firm are also governed by rules 4-1.9 and 4-1.10. The disqualification stated in rule 4-1.7(d) is personal and is not imputed to members of firms with whom the lawyers are associated.

The purpose of Rule 4-1.7(d) is to prohibit representation of adverse interests, unless informed consent is given by the client, by a lawyer related to another lawyer by blood, adoption, or marriage as a parent, child, sibling, or spouse so as to include those with biological or adopted children and within relations by marriage those who would be considered in-laws and stepchildren and stepparents.

**Representation of ~~Insureds~~insureds**

The unique tripartite relationship of insured, insurer, and lawyer can lead to ambiguity as to whom a lawyer represents. In a particular case, the lawyer may represent only the insured, with the insurer having the status of a non-client third party payor of the lawyer's fees. Alternatively, the lawyer may represent both as dual clients, in the absence of a disqualifying conflict of interest, upon compliance with applicable rules. Establishing clarity as to the role of the lawyer at the inception of the representation avoids misunderstanding that may ethically compromise the lawyer. This is a general duty of every lawyer undertaking representation of a client, which is made specific in this context due to the desire to minimize confusion and inconsistent expectations that may arise.

**Consent confirmed in writing or stated on the record at a hearing**

Subdivision (b) requires the lawyer to obtain the informed consent of the client, confirmed in writing or clearly stated on the record at a hearing. With regard to being confirmed in writing, such a writing may consist of a document executed by the client or one that the lawyer promptly records and transmits to the client following an oral consent. See terminology. If it is not feasible to obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time ~~thereafter~~afterwards. See terminology. The requirement of a writing does not supplant the need in most cases for the lawyer to talk with the client, to explain the risks and advantages, if any, of representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns. Rather, the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing.

# RULE 4-1.9 CONFLICT OF INTEREST; FORMER CLIENT

A lawyer who has formerly represented a client in a matter ~~shall~~must not ~~thereafter~~afterwards:

(a) – (c)  [**No Change**]

## Comment

After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this rule.  The principles in rule 4-1.7 determine whether the interests of the present and former client are adverse.  Thus, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client.  So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.

The scope of a "matter" for purposes of rule 4-1.9(a) may depend on the facts of a particular situation or transaction.  The lawyer's involvement in a matter can also be a question of degree.  When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited.  On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.  Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction.  The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client.  For example, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.

Lawyers owe confidentiality obligations to former clients, and thus information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client without the former client's consent. ~~For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce.~~ However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client. Information that has been widely disseminated by the media to the public, or that typically would be obtained by any reasonably prudent lawyer who had never represented the former client, should be considered generally known and ordinarily will not be disqualifying. The essential question is whether, but for having represented the former client, the lawyer would know or discover the information.

Information acquired in a prior representation may have been rendered obsolete by the passage of time. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

The provisions of this rule are for the protection of clients and can be waived if the former client gives informed consent. See terminology.

With regard to an opposing party's raising a question of conflict of interest, see comment to rule 4-1.7. With regard to disqualification of a firm with which a lawyer is associated, see rule 4-1.10.


## RULE 4-1.10 IMPUTATION OF CONFLICTS OF INTEREST; GENERAL RULE

**(a) Imputed Disqualification of All Lawyers in Firm.** While lawyers are associated in a firm, none of them ~~shall~~may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of

materially limiting the representation of the client by the remaining lawyers in the firm.

      **(b) – (e)  [No Change]**

### Comment

**Definition of "firm"**
      [**No Change**]

**Principles of imputed disqualification**
      [**No Change**]

**Lawyers moving between firms**
      [**No Change**]

**Confidentiality**
      Preserving confidentiality is a question of access to information.  Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions, or working presumptions that reasonably may be made about the way in which lawyers work together.  A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients.  In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not information about other clients.

      Application of subdivisions (b) and (c) depends on a situation's particular facts.  In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

      Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of <u>relevant </u>information protected by rules 4-1.6 and 4-1.9(b) and (c).  Thus, if a lawyer while with 1 firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the 2 clients conflict.

      Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented.  See rules 4-1.6 and 4-1.9.

**Adverse positions**
        [**No Change**]


## 4-2.  COUNSELOR
## RULE 4-2.4  LAWYER SERVING AS THIRD-PARTY NEUTRAL

   **(a)**  [**No Change**]
   **(b)  Communication With Unrepresented Parties.**  A lawyer serving as a third-party neutral ~~shall~~must inform unrepresented parties that the lawyer is not representing them.  When the lawyer knows or reasonably should know that a party does not understand the lawyer's role in the matter, the lawyer ~~shall~~must explain the difference between the lawyer's role as a third-party neutral and a lawyer's role as one who represents a client.

### Comment
        Alternative dispute resolution has become a substantial part of the civil justice system.  Aside from representing clients in dispute-resolution processes, lawyers often serve as third-party neutrals.  A third-party neutral is a person, such as a mediator, arbitrator, conciliator, or evaluator, who assists the parties, represented or unrepresented, in the resolution of a dispute or in the arrangement of a transaction.  Whether a third-party neutral serves primarily as a facilitator, evaluator, or decision-maker depends on the particular process that is either selected by the parties or mandated by a court.
        The role of a third-party neutral is not unique to lawyers, although, in some court-connected contexts, only lawyers are allowed to serve in this role or to handle certain types of cases.  In performing this role, the lawyer may be subject to court rules or other law that apply either to third-party neutrals generally or to lawyers serving as third-party neutrals.  Lawyer-neutrals may also be subject to various codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint committee of the American Bar Association and the American Arbitration Association, or the Model Standards of Conduct for Mediators jointly prepared by the American Bar Association, the American Arbitration Association and ~~the Society of Professionals in Dispute Resolution~~Association for Conflict Resolution.  A Florida Bar member who is a certified or court-appointed mediator is governed by the applicable law and rules relating to certified or court-appointed mediators.
        Unlike nonlawyers who serve as third-party neutrals, lawyers serving in this role may experience unique problems as a result of differences between the role of

a third-party neutral and a lawyer's service as a client representative. The potential for confusion is significant when the parties are unrepresented in the process. Thus, subdivision (b) requires a lawyer-neutral to inform unrepresented parties that the lawyer is not representing them. For some parties, particularly parties who frequently use dispute resolution processes, this information will be sufficient. For others, particularly those who are using the process for the first time, more information will be required. Where appropriate, the lawyer should inform unrepresented parties of the important differences between the lawyer's role as third-party neutral and a lawyer's role as a client representative, including the inapplicability of the attorney-client evidentiary privilege. The extent of disclosure required under this subdivision will depend on the particular parties involved and the subject matter of the proceeding, as well as the particular features of the dispute resolution process selected.

A lawyer who serves as a third-party neutral subsequently may be asked to serve as a lawyer representing a client in the same matter. The conflicts of interest that arise for both the individual lawyer and the lawyer's law firm are addressed in rule 4-1.12.

# 4-3.  ADVOCATE
## RULE 4-3.4 FAIRNESS TO OPPOSING PARTY AND COUNSEL

A lawyer ~~shall~~must not:
(a)  [**No Change**]
 (b)  fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, noncontingent fee for professional services of an expert witness; and reasonable compensation to ~~reimburse~~ a witness for ~~the loss of compensation incurred by reason of~~time spent preparing for, attending, or testifying at proceedings;
(c) – (h)  [**No Change**]

## Comment
The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.

Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealed, or destroyed. Applicable law in many jurisdictions makes it an offense to destroy material for the purpose of impairing its availability in a pending proceeding or one whose commencement can be foreseen. Falsifying evidence is also generally a criminal offense. Subdivision (a) applies to evidentiary material generally, including computerized information.

With regard to subdivision (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee.

Previously, subdivision (e) also proscribed statements about the credibility of witnesses. However, in 2000, the Supreme Court of Florida entered an opinion in *Murphy v. International Robotic Systems, Inc.*, 766 So. 2d 1010 (Fla. 2000), ~~wherein~~in which the court allowed counsel in closing argument to call a witness a "liar" or to state that the witness "lied."

There the court stated: "First, it is not improper for counsel to state during closing argument that a witness 'lied' or is a 'liar,' provided such characterizations are supported by the record." *Murphy*, id., at 1028. Members of the bar are advised to check the status of the law in this area.

Subdivision (f) permits a lawyer to advise employees of a client to refrain from giving information to another party, for the employees may identify their interests with those of the client. See also rule 4-4.2.


## 4-4. TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS
## RULE 4-4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

(a) In representing a client, a lawyer ~~shall~~must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer. Notwithstanding the foregoing, ~~an attorney~~a lawyer may, without such prior consent, communicate with another's client ~~in order~~ to meet the requirements of any court rule, statute or contract requiring notice or service of process directly on ~~an adverse party~~a person, in which event the communication ~~shall be~~is strictly restricted to that required by the court rule, statute or contract, and a copy ~~shall~~must be provided to the ~~adverse party's~~person's ~~attorney~~lawyer.

(b)  [**No Change**]

**Comment**
[**No Change**]

## 4-6.  PUBLIC SERVICE
## RULE 4-6.5 VOLUNTARY PRO BONO PLAN

(a)  **Purpose.**  The purpose of the voluntary pro bono attorney plan is to increase the availability of legal service to the poor.  The following operating plan has as its goal the improvement of the availability of legal services to the poor and the expansion of present pro bono legal service programs.  The following operating plan shall bewas implemented to accomplish this purpose and goal.

(b)  **Standing Committee on Pro Bono Legal Service.**  The president-elect of The Florida Bar shall appointis responsible for appointing a standing committee on pro bono legal service to the poor.

(1)  *Composition of the Standing Committee.*  The standing committee shall be composed ofconsists of no more than 25 members and include, but not be limited to:

(A)  5 members of the board of governors of The Florida Bar, 1 of whom shall beis the chair or a member of the access to the legal system committee of the board of governors;

(B) – (H) [**No Change**]

(2)  *Responsibilities of the Standing Committee.*  The standing committee shallwill:

(A)  identify, encourage, support, and assist statewide and local pro bono projects and activities;

(B)  receive reports from circuit committees submitted on standardized forms developed by the standing committee;

(BC)  review and evaluate circuit court pro bono plans;

(CD)  beginning in the first year in which individual attorney pro bono reports are due, submit an annual report as to the activities and results of the pro bono plan to the board of governors of The Florida Bar, The Florida Bar Foundation, and to the Supreme Court of Florida;

(DE)  present to the board of governors of The Florida Bar and to the Supreme Court of Florida any suggested changes or modifications to the pro bono rules.

(c)  **Circuit Pro Bono Committees.**  There shallwill be 1 circuit pro bono committee in each of the judicial circuits of Florida.  In each judicial circuit the

chief judge of the circuit, or the chief judge's designee, shall appoint and convene the initial circuit pro bono committee and the committee ~~shall~~will appoint its chair.

(1) *Composition of Circuit Court Pro Bono Committee.* Each circuit pro bono committee ~~shall be~~is composed of:

(A) **[No Change]**

(B) to the extent feasible, 1 or more representatives from each voluntary bar association, including each federal bar association, recognized by The Florida Bar and 1 representative from each pro bono and legal assistance provider in the circuit, which representatives ~~shall be~~are nominated by the association or provider; and

(C) at least 1 public member and at least 1 client-eligible member, which members ~~shall be~~are nominated by the other members of the circuit pro bono committee.

Governance and terms of service ~~shall be~~are determined by each circuit pro bono committee. Replacement and succession members ~~shall be~~are appointed by the chief judge of the circuit or the chief judge's designee, upon nomination by the association, the provider organization or the circuit pro bono committee, as the case may be, as deemed appropriate or necessary to ensure an active circuit pro bono committee in each circuit.

(2) *Responsibilities of Circuit Pro Bono Committee.* The circuit pro bono committee ~~shall~~will:

(A) – (C) **[No Change]**

(D) ~~to the extent possible,~~use current legal assistance and pro bono programs in each circuit ~~shall be utilized~~, to the extent possible, to implement and operate circuit pro bono plans and provide the necessary coordination and administrative support for the circuit pro bono committee;

(E) ~~to~~encourage more lawyers to participate in pro bono activities~~, each circuit pro bono plan should provide~~ by preparing a plan that provides for various support and educational services for participating pro bono attorneys, which, to the extent possible, should include:

(i) ~~providing~~intake, screening, and referral of prospective clients;

(ii) **[No Change]**

(iii) ~~providing~~resources ~~of~~for litigation and out-of-pocket expenses for pro bono cases;

- 43 -

(iv) ~~providing~~ legal education and training for pro bono attorneys in specialized areas of law useful in providing pro bono legal service;

(v) ~~providing~~ the availability of consultation with attorneys who have expertise in areas of law with respect to which a volunteer lawyer is providing pro bono legal service;

(vi) ~~providing~~ malpractice insurance for volunteer pro bono lawyers with respect to their pro bono legal service;

(vii) ~~establishing~~ procedures to ensure adequate monitoring and follow-up for assigned cases and to measure client satisfaction; and

(viii) [**No Change**]

**(d)** [**No Change**]

## 4-8. MAINTAINING THE INTEGRITY OF THE PROFESSION RULE 4-8.6 AUTHORIZED BUSINESS ENTITIES

**(a) – (b)** [**No Change**]

**(c) Qualifications of Managers, Directors and Officers.** No person ~~shall~~may serve as a partner, manager, director or executive officer of an authorized business entity ~~and~~that is engaged in the practice of law in Florida unless such person is legally qualified to render legal services in this state. For purposes of this rule the term "executive officer" ~~shall~~ includes the president, vice-president, or any other officer who performs a policy-making function.

**(d) Violation of Statute or Rule.** A lawyer who, while acting as a shareholder, member, officer, director, partner, proprietor, manager, agent, or employee of an authorized business entity and engaged in the practice of law in Florida, violates or sanctions the violation of the authorized business entity statutes or the Rules Regulating The Florida Bar ~~shall~~will be subject to disciplinary action.

**(e) Disqualification of Shareholder, Member, Proprietor, or Partner; Severance of Financial Interests.** Whenever a shareholder of a professional service corporation, a member of a professional limited liability company, proprietor, or partner in a limited liability partnership becomes legally disqualified to render legal services in this state, said shareholder, member, proprietor, or partner ~~shall~~must sever all employment with and financial interests in such authorized business entity immediately. For purposes of this rule the term "legally disqualified" ~~shall~~does not include suspension from the practice of law for a period of time less than 91 days. Severance of employment and financial interests

required by this rule ~~shall~~will not preclude the shareholder, member, proprietor, or partner from receiving compensation based on legal fees generated for legal services performed during the time when the shareholder, member, proprietor, or partner was legally qualified to render legal services in this state. This provision ~~shall~~will not prohibit employment of a legally disqualified shareholder, member, proprietor, or partner in a position that does not render legal service nor payment to an existing profit sharing or pension plan to the extent permitted in rules 3-6.1 and 4-5.4(a)(3), or as required by applicable law.

**(f) Cessation of Legal Services.** Whenever all shareholders of a professional service corporation, or all members of a professional limited liability company, the proprietor of a solo practice, or all partners in a limited liability partnership become legally disqualified to render legal services in this state, the authorized business entity ~~shall~~must cease the rendition of legal services in Florida.

**(g) Application of Statutory Provisions.** Unless otherwise provided in this rule, each shareholder, member, proprietor, or partner of an authorized business entity ~~shall~~will possess all rights and benefits and ~~shall~~will be subject to all duties applicable to such shareholder, member, proprietor, or partner provided by the statutes pursuant to which the authorized business entity was organized or qualified.

## Comment
[**No Change**]

**Limitation on rendering legal services**
[**No Change**]

**Employment by and financial interests in an authorized business entity**
[**No Change**]

**Profit sharing or pension plans**
To the extent that applicable law requires continued payment to existing profit sharing or pension plans, nothing in this rule or the statute may abridge such payments. However, if permitted under applicable law the amount paid to the plan for a legally disqualified shareholder, member, proprietor, or partner ~~shall~~will not include payments based on legal services rendered while the legally disqualified shareholder, member, proprietor, or partner was not qualified to render legal services

**Interstate ~~Practice~~practice**

This rule permits members of The Florida Bar to engage in the practice of law with lawyers licensed to practice elsewhere in an authorized business entity organized under the laws of another jurisdiction and qualified under the laws of Florida (or vice-versa), but nothing hereinin this rule is intended to affect the ability of non-members of The Florida Bar to practice law in Florida. See, e.g., *Fla. Bar v. Savitt*, 363 So. 2d 559 (Fla. 1978).

The terms qualified and legally disqualified are imported from the Professional Service Corporation Act (Chapter 621, Florida Statutes).

# CHAPTER 5. RULES REGULATING TRUST ACCOUNTS
## 5-1. GENERALLY
## RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES

**(a) Applicability.** The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law as members of The Florida Bar except special trust funds received or disbursed by a lawyer as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court that has authority or duty to issue orders pertaining to maintenance of such special trust account. These rules shall apply to matters whereinin which a choice of laws analysis indicates that such matters are governed by the laws of Florida.

As set forth in this rule, "lawyer" denotes a person who is a member of The Florida Bar or otherwise authorized to practice in any court of the state of Florida. "Law firm" denotes a lawyer or lawyers in a private firm who handle client trust funds.

**(b) Minimum Trust Accounting Records.** Records may be maintained in their original format or stored in digital media as long as the copies include all data contained in the original documents and may be produced when required. The following are the minimum trust accounting records that shallmust be maintained:

(1) – (2) [**No Change**]

(3) original canceled checks or clearly legible copies of original canceled checks for all funds disbursed from the trust account, all of which must:

(A) be numbered consecutively,;

(B) include all endorsements and all other data and tracking information,; and

(C) [**No Change**]

(4)  [**No Change**]

(5)  original or clearly legible digital copies of all records regarding all wire transfers into or out of the trust account, which at a minimum must include the receiving and sending financial institutions' ABA routing numbers and names, and the receiving and sending account holder's name, address and account number.  If the receiving financial institution processes through a correspondent or intermediary bank, then the records must include the ABA routing number and name for the intermediary bank.  The wire transfer information must also include the name of the client or matter for which the funds were transferred or received, and the purpose of the wire transfer, (e.g., "payment on invoice 1234" or "John Doe closing").

(56)  a separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:

(A) – (D)  [**No Change**]

(67)  a separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unexpended balance, and containing:

(A) – (D)  [**No Change**]

(78)  all bank or savings and loan association statements for all trust accounts.

**(c)  Responsibility of Lawyers for Firm Trust Accounts and Reporting.**

(1)  Every law firm with more than 1 lawyer must have a written plan in place for supervision and compliance with this rule for each of the firm's trust account(s), which plan must be disseminated to each lawyer in the firm.  The written plan must include the name(s) of the lawyer(s) who sign trust account checks for the law firm, the name(s) of the lawyer(s) who are responsible for reconciliation of the law firm's trust account(s) monthly and annually and the name(s) of the lawyer(s) who are responsible for answering any questions that lawyers in the firm may have about the firm's trust account(s). This written plan must be updated and re-issued to each lawyer in the firm whenever there are material changes to the plan, such as a change in the lawyer(s) signing trust account checks and/or reconciliation of the firm's trust account(s).

(2)  Every lawyer is responsible for that lawyer's own actions regarding trust account funds subject to the requirements of chapter 4 of these rules.  Any lawyer who has actual knowledge that the firm's trust account(s) or trust accounting procedures are not in compliance with chapter 5 may report the noncompliance to the managing partner or shareholder of the lawyer's firm.  If the noncompliance is not corrected within a reasonable time, the lawyer must

report the noncompliance to staff counsel for the bar if required to do so pursuant to the reporting requirements of chapter 4.

(ed)  **Minimum Trust Accounting Procedures.**  The minimum trust accounting procedures that ~~shall~~must be followed by all members of The Florida Bar (when a choice of laws analysis indicates that the laws of Florida apply) who receive or disburse trust money or property are as follows:
    (1)  The lawyer ~~shall cause to be made~~is required to make monthly:
        (A)  [**No Change**]
        (B)  a comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the 2 totals and reasons ~~therefor~~for the differences.
    (2)  ~~At least annually, the~~The lawyer ~~shall~~is required to prepare a~~n~~ annual detailed list~~ing~~ identifying the balance of the unexpended trust money held for each client or matter.
    (3)  The above reconciliations, comparisons, and listings ~~shall~~must be retained for at least 6 years.
    (4)  The lawyer or law firm ~~shall~~must authorize, at the time the account is opened, and request any bank or savings and loan association where the lawyer is a signatory on a trust account to notify Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, in the event the account is overdrawn or any trust check is dishonored or returned due to insufficient funds or uncollected funds, absent bank error.
    (5)  The lawyer ~~shall~~must file with The Florida Bar between June 1 and August 15 of each year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.  If the lawyer fails to file the trust accounting certificate, the lawyer will be deemed a delinquent member and ineligible to practice law.

(de)  **Electronic Wire Transfers.**  Authorized electronic transfers from a lawyer or law firm's trust account ~~shall be~~are limited to:
    (1) – (4)  [**No Change**]

(ef)  **Record Retention.**  A lawyer or law firm that receives and disburses client or third-party funds or property ~~shall~~must maintain the records required by this chapter for 6 years subsequent to the final conclusion of each representation in which the trust funds or property were received.

**(fg) Audits.** Any of the following shall beare cause for The Florida Bar to order an audit of a trust account:

(1) – (9)  [**No Change**]

**(gh) Cost of Audit.** Audits conducted in any of the circumstances enumerated in this rule shallwill be at the cost of the lawyer audited only when the audit reveals that the lawyer was not in substantial compliance with the trust accounting requirements.  It shallwill be the obligation of any lawyer who is being audited to produce all records and papers concerning property and funds held in trust and to provide such explanations as may be required for the audit.  Records of general accounts are not required to be produced except to verify that trust money has not been deposited theretoin them.  If it has been determined that trust money has been deposited into a general account, all of the transactions pertaining to any firm account will be subject to audit.

**(hi) Failure to Comply With Subpoena for Trust Accounting Records.** Failure of a member to timely produce trust accounting records shallwill be considered as a matter of contempt and process in the manner provided in subdivision (d) and (f) of rule 3-7.11, Rules Regulating The Florida Bar.

## CHAPTER 10.  RULES GOVERNING THE INVESTIGATION AND PROSECUTION OF THE UNLICENSED PRACTICE OF LAW
### SUBCHAPTER 10-3 STANDING COMMITTEE
### RULE 10-3.1 GENERALLY

**(a) Appointment and Terms.** TheMembers of the standing committee on UPL areshall be appointed by the court onSupreme Court of Florida, with advice of the board of governorsfrom the Board of Governors of The Florida Bar and shall.  The committee must consist of 3725 members, 18 of whom shall beincluding 12 nonlawyers.  The board of governors is delegated the authority to appoints a chair and at least 1 vice-chair of the standing committee, both of whom, who may be nonlawyers.  One-third of the members of the standing committee shall constitute a quorum.  All appointments to the standing committee shall beare for a 3-year term of 3 years.  NoA member shall be appointed tomay not serve more than 2 full consecutive terms.  The membersOne-third of the members of the standing committee constitutes a quorum.  Members of the standing committee shall not beare not subject to removal by the court during their terms of office except for cause.  Cause shallmay include unexcused failures to attendabsences

from scheduled meetings, the number ~~of which shall be set forth~~to be set by the standing committee in an attendance policy.

**(b) Recusal.** ~~No~~A member of the standing committee ~~shall~~must not perform any standing committee function when that member:

(1) – (4)  [**No Change**]

~~Upon notice of any of the above prohibitions the affected m~~Members should recuse themselves from participation in further proceedings on notice of any of the prohibitions.  The standing committee chair ~~shall have the power to~~may disqualify any member from any proceeding in which any of the above prohibitions exists ~~and is stated of~~.  The chair must state the prohibition on the record or in writing in the~~a~~ file ~~by the chair~~.


## 10-7.  PROCEEDINGS BEFORE A REFEREE
## RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT

**(a) Petitions for Indirect Criminal Contempt.**  Nothing ~~set forth herein shall be construed to prohibit or limit~~within these rules prohibits or limits the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.

(1)  Upon receiving a sworn petition of the president, executive director of The Florida Bar, or the chair of the standing committee alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law or has failed to pay restitution as provided elsewhere in this chapter, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law or for the failure to pay restitution as ordered. The referee ~~shall~~must be a circuit judge of the state of Florida.  The order ~~shall~~must specify the time and place of the hearing, and a reasonable time ~~shall~~must be allowed for preparation of the defense after service of the order on the respondent.

(2)  The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer such order by way of explanation or defense.  All motions and the answer ~~shall~~must be in writing.  A respondent's omission to file motions or answer ~~shall~~will not be deemed ~~as~~ an admission of guilt of the contempt charged.

- 50 -

**(b) Indigency of Respondent.** Any respondent who is determined to be indigent by the referee ~~shall be~~is entitled to the appointment of counsel.

(1) *Affidavit.* A respondent asserting indigency ~~shall~~must file with the referee a completed affidavit containing the statutory financial information required to be submitted to the clerk of court when determining indigent status and stating that the affidavit is signed under oath and under penalty of perjury.

(2) *Determination.* After reviewing the affidavit and questioning the respondent, the referee ~~shall~~must make one of the following determinations: the respondent is indigent or the respondent is not indigent.

In making this determination, the referee ~~shall~~must consider the applicable statutory criteria used by the clerk of court when determining indigent status and the applicable statutory factors considered by a court when reviewing that determination.

**(c) Proceedings Before the Referee.** Proceedings before the referee ~~shall~~must be in accordance with the following:

(1) Venue for the hearing before the referee ~~shall~~must be in the county where the respondent resides or where the alleged offense was committed, whichever ~~shall be~~is designated by the court.

(2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent ~~shall~~will be admitted to bail in the manner provided by law in criminal cases.

(3) The respondent ~~shall~~will be arraigned and enter a plea at the time of the hearing before the referee, or prior ~~thereto~~upon request. A subsequent hearing to determine the guilt or innocence of the respondent ~~shall~~will follow a plea of not guilty. The date and time of the subsequent hearing will be set at the arraignment. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent's own defense. No respondent may be compelled to testify. A presumption of innocence ~~shall~~will be accorded the respondent. The Florida Bar, which ~~shall~~will act as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.

(4) Subpoenas for the attendance of witnesses and the production of documentary evidence ~~shall~~will be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena ~~shall be~~is a contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.

(5)  The referee ~~shall~~will hear all issues of law and fact and all evidence and testimony presented ~~shall~~will be transcribed.

(6)  At the conclusion of the hearing, the referee ~~shall~~will sign and enter of record a judgment of guilty or not guilty.  There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty, and the costs of prosecution, including investigative costs and restitution, if any, ~~shall~~will be included and entered in the judgment rendered against the respondent.  The amount of restitution ~~shall~~must be specifically set forth in the judgment and ~~shall~~must not exceed the amount paid to respondent by complainant(s).  The judgment ~~shall~~must also state the name of the complainant(s) to whom restitution is to be made, the amount of restitution to be made, and the date by which it shall be completed.  The referee ~~shall have~~has discretion over the timing of payments, over how those payments are to be distributed to multiple complainant(s), and whether restitution ~~shall~~will bear interest at the legal rate provided for judgments in this state.  In determining the amount of restitution to be paid to complainant(s), the referee ~~shall~~will consider any documentary evidence that shows the amount paid to respondent by complainant(s), including cancelled checks, credit card receipts, receipts from respondent, and any other documentation evidencing the amount of payment.  Nothing in this section ~~shall~~ precludes an individual from seeking redress through civil proceedings to recover fees or other damages.

(7)  Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee ~~shall~~will inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence ~~shall~~will be pronounced in open court and in the presence of the respondent.

**(d)  Record.**

(1)  *Contents*.  The record ~~shall~~must include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.

(2)  *Preparation and Filing*.  The referee, with the assistance of bar counsel, ~~shall~~must prepare the record, certify that the record is complete, serve a copy of the index of the record on the respondent and The Florida Bar, and file the record with the office of the clerk of the Supreme Court of Florida.

(3)  [**No Change**]

**(e)  Review by the Supreme Court of Florida.**  The judgment and recommended sentence, upon a finding of "guilty," together with the entire record

of proceedings shallmust then be forwarded to this courtthe Supreme Court of Florida for approval, modification, or rejection based upon the law.  The respondent may file objections, together with a supporting brief or memorandum of law, to the referee's judgment and recommended sentence within 30 days of the date of filing with the court of the referee's judgment, recommended sentence, and record of proceedings, or in the case where a party seeks review of a referee's denial to supplement or remove an item from the record, within 30 days after the court issues its ruling on that matter.  Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.

The Florida Bar may file a responsive brief or memorandum of law within 20 days after service of respondent's brief or memorandum of law.  The respondent may file a reply brief or memorandum of law within 20 days after service of The Florida Bar's responsive brief or memorandum of law.

**(f)  Fine or Punishment.**  The punishment for an indirect criminal contempt under this chapter shall be bywill be a fine not to exceed $2500, imprisonment of up to 5 months, or both.

**(g)**  [**No Change**]


**CHAPTER 12.  EMERITUS ATTORNEYS PRO BONO PARTICIPATION PROGRAM**
**12-1.  GENERALLY**
**RULE 12-1.2 DEFINITIONS**

**(a)  Emeritus Attorney.**  An "emeritus attorney" is any person, retired from the active practice of law, who is or was admitted to practice law before the highest court ofwho is retired from the practice of law in Florida or any other state or territory of the United States or the District of Columbia, or is an authorized house counsel certified by the Supreme Court of Florida and who:

(1)  has beenwas engaged in the active practice of law for a minimum of 10 out of the 15 years immediately preceding the application to participate in the emeritus program, except that this requirement does not apply to authorized house counsel certified under chapter 17 of these rules;

(2)  has beenwas a member in good standing of The Florida Bar or the entity governing the practice of law of any other state, territory, or the District of Columbia and has not been disciplined for professional misconduct by the bar or courts of any jurisdiction within the past 15 years;

(3) – (4)  **[No Change]**

(5)  neither asks for nor receives compensation of any kind for the legal services to be rendered ~~hereunder~~under this rule; and

(6)  **[No Change]**

**(b)  Approved Legal Aid Organization.**  An "approved legal aid organization" for the purposes of this chapter is a not-for-profit legal aid organization that is approved by the Supreme Court of Florida ~~as set forth herein~~. A legal aid organization seeking approval ~~from the Supreme Court of Florida for the purposes of this chapter shall~~must file a petition with the clerk of the Supreme Court of Florida certifying that it is a not-for-profit organization and reciting with specificity:

(1) – (6)  [**No Change**]

**(c)  Supervising Attorney.**  A "supervising attorney" as used ~~herein~~in this chapter is a member in good standing of The Florida Bar who directs and supervises an emeritus attorney engaged in activities permitted by this chapter. The supervising attorney must:

(1) – (2)  [**No Change**]

## RULE 12-1.3 ACTIVITIES

**(a)  Permissible Activities.**  An emeritus attorney, in association with an approved legal aid organization and under the supervision of a supervising attorney, may perform the following activities:

(1)  The emeritus attorney may appear in any court or before any administrative tribunal in this state on behalf of a client of an approved legal aid organization if the person on whose behalf the emeritus attorney is appearing has consented in writing to that appearance and a supervising attorney has given written approval for that appearance.  The written consent and approval ~~shall~~must be filed in the record of each case and ~~shall be~~ brought to the attention of a judge of the court or the presiding officer of the administrative tribunal.

(2)  The emeritus attorney may prepare pleadings and other documents to be filed in any court or before any administrative tribunal in this state in any matter in which the emeritus attorney is involved. ~~Such pleadings also shall be signed by the supervising attorney.~~  The supervising lawyer must sign all documents filed with the court.

(3)  [**No Change**]

**(b)** [**No Change**]

## RULE 12-1.4 SUPERVISION AND LIMITATIONS

**(a)** [**No Change**]

**(b) Representation of Bar Membership Status.** Emeritus attorneys permitted to perform services ~~under this chapter~~ are not, and ~~shall~~must not represent themselves to be, active members of The Florida Bar licensed to practice law in this state.

**(c) Payment of Expenses and Award of Fees.** The prohibition against compensation for the emeritus attorney contained in rule 12-1.2(a)(5) ~~shall~~will not prevent the approved legal aid organization from reimbursing the emeritus attorney for actual expenses incurred while rendering approved services ~~hereunder nor shall it~~. It does not prevent the approved legal aid organization from ~~making such charges~~charging for its services as it may ~~otherwise~~ properly charge. The approved legal aid organization ~~shall~~will be entitled to receive all court-awarded attorneys' fees for any representation rendered by the emeritus attorney.

## RULE 12-1.5 CERTIFICATION

~~Permission to Perform Services. Permission for an~~ An emeritus attorney seeking to ~~perform~~provide pro bono legal services ~~under this chapter shall become effective upon filing with and~~must obtain approval ~~by~~from the ~~c~~Clerk of the Supreme Court of Florida ~~of~~by filing all of the following certificates:

(a) a ~~certification by~~certificate from an approved legal aid organization stating that the emeritus attorney is currently associated with that legal aid organization and that ~~an attorney~~a Florida Bar member employed by or participating as a volunteer with that organization will assume the required duties of the supervising ~~attorney required hereunder~~lawyer;

(b) a certificate from the highest court or agency in ~~the~~any state, territory, or district in which the emeritus attorney ~~previously~~ has been licensed to practice law, certifying that the emeritus attorney has fulfilled the requirements of active bar membership and ~~has a clear disciplinary record as required by rule 12-1.2(a)(2)~~has not been disciplined for professional misconduct by the bar or courts of that jurisdiction within the past 15 years. An authorized house counsel certified by the Supreme Court of Florida under chapter 17 of these rules need not provide this certificate; and

(c) a sworn statement by the emeritus attorney that the emeritus attorney:

(1)  has read and ~~is familiar with~~will abide by the Rules of Professional Conduct as adopted by the Supreme Court of Florida ~~and will abide by the provisions thereof~~;

(2)  submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes~~,~~ as defined by ~~the~~chapter 3, Rules of Discipline, and by rules 12-1.2(a)(4) and 12-1.7, R. Regulating Fla. Bar; and

(3)  will neither ask for nor receive compensation of any kind for the legal services authorized ~~hereunder~~by this rule.


## RULE 12-1.6 WITHDRAWAL OF CERTIFICATION

**(a)  Withdrawal of Permission to Perform Services.**  ~~Permission to perform services under this chapter shall cease immediately upon the filing with the clerk of the Supreme Court of Florida of a notice either:~~The emeritus attorney must immediately cease performing legal services if:

(1)  ~~by~~ the approved legal aid organization ~~stating~~files a statement with the Clerk of the Supreme Court of Florida that:

(A)  the emeritus attorney has ceased to be associated with the organization~~, which~~.  This notice must be filed within 5 days after such association has ceased; or

(B)  certification of such attorney is withdrawn.  An approved legal aid organization may withdraw certification at any time and it is not necessary that the notice state the cause for such withdrawal.

~~A~~The legal aid organization must mail a copy of the notice filed with the clerk of the Supreme Court of Florida ~~shall be mailed by the organization~~ to the emeritus attorney concerned; or

(2)  ~~by~~ the Supreme Court of Florida, in its discretion, at any time, ~~stating that~~revokes permission for the emeritus attorney to perform pro bono services ~~under this chapter has been revoked.  A copy of such notice shall be mailed by the clerk~~The Clerk of the Supreme Court of Florida must mail a copy of the statement to the emeritus attorney ~~involved~~ and ~~to~~ the approved legal aid organization ~~by which the emeritus attorney had been certified~~.

(3)  The Florida Bar files a statement with the Supreme Court of Florida that the individual is no longer an authorized house counsel.  The Florida Bar must mail a copy of the statement to the emeritus attorney involved.

**(b) Notice of Withdrawal.** If an emeritus attorney's certification is withdrawn for any reason, the supervising attorney ~~shall~~must immediately file a notice of ~~such action~~the withdrawal in the official file of each matter pending before any court or tribunal in which the emeritus attorney was involved.

## RULE 12-1.7 DISCIPLINE

~~In addition to any appropriate proceedings and discipline that may be imposed by the~~The Supreme Court of Florida may impose appropriate proceedings and discipline under the Rules of Discipline or the Rules of Professional Conduct~~,~~. ~~the emeritus attorney shall be subject to the following disciplinary measures:~~. In addition, the Supreme Court of Florida or the approved legal aid organization may, with or without cause, withdraw certification and ~~(a)~~ the presiding judge or hearing officer for any matter in which the emeritus attorney has participated may hold the emeritus attorney in civil contempt for any failure to abide by ~~such~~the tribunal's orders~~; and~~.

~~(b) the Supreme Court of Florida or the approved legal aid organization may, at any time, with or without cause, withdraw certification hereunder~~.

## CHAPTER 14. GRIEVANCE MEDIATION AND FEE ARBITRATION
## 14-1. ESTABLISHMENT
## RULE 14-1.2 JURISDICTION

**(a) Fee Arbitration.** The program ~~shall have~~has jurisdiction to resolve disputes between members of The Florida Bar or between a member of The Florida Bar and a client or clients over a fee paid, charged, or claimed for legal services rendered by a member of The Florida Bar when the parties to the dispute agree to arbitrate under the program either by written contract that complies with the requirements of subdivision (i) of rule 4-1.5 or by a request for arbitration signed by all parties, or as a condition of probation or as a part of a discipline sanction as authorized elsewhere in these Rules Regulating The Florida Bar. Jurisdiction ~~shall be~~is limited to matters in which:

(1) [**No Change**]

~~(2) the amount of attorneys' fees in controversy is $100,000 or less; and~~

(~~3~~2) it is estimated by all parties that all the evidence bearing on the disputed issues of fact may be heard in 8 hours or less.

The program ~~shall~~does not have jurisdiction to resolve disputes involving matters in which a court has taken jurisdiction to determine and award a reasonable

fee to a party or that involve fees charged that constitute a violation of the Rules Regulating The Florida Bar, unless specifically referred to the program by the court or by bar counsel.

The program ~~shall have~~has authority to decline jurisdiction to resolve any particular dispute by reason of its complexity and protracted hearing characteristics.

**(b) Grievance Mediation.** The program ~~shall have~~has jurisdiction to mediate the issues in a disciplinary file referred to the program in which the public interest is satisfied by the resolution of the private rights of the parties to the mediation. The program ~~shall~~does not have jurisdiction to resolve the issues in a disciplinary file if any issue involved in that file must remain for resolution within the disciplinary process.

## CHAPTER 17. AUTHORIZED HOUSE COUNSEL RULE
## 17-1. GENERALLY
## RULE 17-1.3 ACTIVITIES

**(a) Authorized Activities.** An authorized house counsel, as an employee of a business organization, may provide legal services in the state of Florida to the business organization for which a registration ~~pursuant to rule 17-1.4~~ is effective~~, provided, however, that such~~. Such activities ~~shall be~~are limited to:

(1) – (2) [**No Change**]

(3) representation of the business organization in its dealings with any administrative agency or commission having jurisdiction; provided however, authorized house counsel ~~shall not be permitted to~~may not make appearances as counsel in any court, administrative tribunal, agency, or commission situated in the state of Florida unless the rules governing such court or body ~~shall otherwise~~ authorize the appearance, or the attorney is specially admitted by such court or body in a case~~.~~;

(4) providing pro bono legal services under chapter 12 of these rules if certified as an emeritus attorney.

**(b) Disclosure.** In any communication with individuals~~/~~ or organizations outside of the business organization, authorized house counsel ~~shall~~must disclose that they are not licensed to practice law in the state of Florida. If the communication is in writing, authorized house counsel ~~shall~~must disclose in writing the name of the business organization, their title or function, and that they are not licensed to practice law in the state of Florida. For example, the disclosure may state "J. Doe, XYZ Corporation, Authorized House Counsel, member …..(name of other state bar).…. only or not a member of The Florida Bar." In

performing activities under this subdivision, authorized house counsel ~~shall~~may not represent themselves ~~to be~~as members of The Florida Bar or licensed to practice law in this state.

**(c) Limitation on Representation.** In no event ~~shall the~~will permitted activities ~~permitted hereunder~~include the individual or personal representation of any shareholder, owner, partner, officer, employee, servant, or agent in any matter or transaction or the giving of advice ~~therefor~~ unless otherwise permitted or authorized by law, code, or rule or ~~as may be permitted~~allowed by subdivision ~~17-1.3~~(a) of this rule.

**(d) Opinions to Third Parties.** An authorized house counsel ~~shall~~may not express or render a legal judgment or opinion ~~to be relied upon by any person or party~~ other than ~~in the course of~~when representing the authorized house counsel's ~~representation of the business organization in which the authorized house counsel is employed~~employer.


# CHAPTER 20. FLORIDA REGISTERED PARALEGAL PROGRAM
## 20-2. DEFINITIONS
### RULE 20-2.1 GENERALLY

For purposes of this chapter, the following terms ~~shall~~ have the following meaning:

**(a) – (b)** [**No Change**]

**(c) Paralegal Work and Paralegal Work Experience.** Paralegal work and paralegal work experience are specifically delegated substantive legal work performed by a person with education, training, or work experience under the direction and supervision of a member of The Florida Bar for which a member of The Florida Bar is responsible. In order to qualify as paralegal work or paralegal work experience for purposes of meeting the eligibility and renewal requirements ~~set forth herein~~, the paralegal must primarily perform paralegal work and the work must be continuous and recent. Recent paralegal work for the purposes of meeting the eligibility and renewal requirements ~~set forth herein~~ means work performed during ~~3 of~~ the previous 5 years in connection with an initial registration, and during the preceding year in the case of a registration renewal. Time spent performing clerical work is specifically excluded.

**(d) Approved Paralegal Program.** An approved paralegal program is a program approved by the American Bar Association ("ABA") or a program that is in substantial compliance with the ABA guidelines by being an institutional member of the American Association for Paralegal Education (AAfPE) and

accredited by a nationally recognized accrediting agency approved by the United States Department of Education.

(e) **Employing or Supervising** ~~Attorney~~**Lawyer.**  An employing or supervising ~~attorney~~lawyer is the ~~attorney~~lawyer having direct supervision over the work product of the paralegal or Florida Registered Paralegal.

(f) – (j)  [**No Change**]

## 20-3.  ELIGIBILITY REQUIREMENTS
### RULE 20-3.1 REQUIREMENTS FOR REGISTRATION

In order to be a Florida Registered Paralegal under this chapter, an individual must meet 1 of the following requirements.

(a) – (b)  [**No Change**]

(c) **Grandfathering Reapplication.**  ~~A person who does not meet the requirements of (a) or (b) may become a Florida Registered Paralegal by providing attestation from an employing or supervising attorney(s) that the person has paralegal work experience as defined elsewhere in these rules for 5 of the 8 years immediately preceding the date of such attestation.  Any such attestation must be received by The Florida Bar not later than 3 years after the effective date of this chapter.~~ A paralegal who was registered under the grandfathering provision on or prior to March 1, 2011, who resigns or whose registration is revoked may reapply based on work experience alone.  The paralegal must provide work experience as defined elsewhere in these rules for 5 of the 8 years immediately preceding the date of reapplication.

## 20-4.  REGISTRATION
### RULE 20-4.1 GENERALLY

The following ~~shall~~must be filed with The Florida Bar by an individual seeking to be registered as a Florida Registered Paralegal:

(a) **Educational, Certification, or Experience Requirement.**

(1)  evidence that the individual has satisfied the requirements of rule 20-3.1(a) by supplying evidence of the degree and attestation from the employing or supervising ~~attorney~~lawyer(s) showing that the individual has the appropriate paralegal work experience; or

(2)  a certificate showing that the individual has obtained 1 of the certifications set forth in rule 20-3.1(b) and attestation from the employing or

supervising lawyer(s) showing that the individual is currently primarily performing paralegal work.; or

(3) attestation from the employing or supervising attorney(s) that the individual has met the requirements of rule 20-3.1(c).

**(b) – (c)** [**No Change**]

(**d**) **Review by The Florida Bar.** Upon receipt of the items set forth in subdivision 20-4.1(a)-(c), The Florida Bar shallwill review the items for compliance with this chapter. Any incomplete submissions will be returned. If the individual meets all of the requirements of this chapter, the individual shallwill be added to the roll of Florida Registered Paralegals and a certificate evidencing such registration shallwill be issued. If there is an open unlicensed practice of law complaint against the individual, the application will be held as pending until the investigation is resolved.

**(e) Annual Renewal; Content and Registration Fee.** TheExcept as provided elsewhere in this rule, the registration pursuant to this subdivision shallwill be annual and consistent with that applicable to an attorneylawyer licensed to practice in the state of Florida. An annual registration fee shallwill be set by the board in an amount not more than the annual fees paid by inactive members of The Florida Bar. The renewal shallmust contain a statement that the individual is primarily performing paralegal work as defined elsewhere in this chapter and a statement that the individual is not ineligible for registration set forth elsewhere in this chapter. A Florida Registered Paralegal who is not primarily performing paralegal work shallis not be eligible for renewal of the registration but may reapply for registration. If there is an open unlicensed practice of law complaint against the individual, renewal will be held as pending until the investigation is resolved.

**(f) Installment Payment of Renewal Fee.** If a Florida Registered Paralegal is employed by a federal, state, or local government, the Florida Registered Paralegal may elect to pay their annual renewal fee in 3 equal installments. The Florida Registered Paralegal's notice of election to pay the renewal fee in installments under this rule and the first installment payment must be postmarked no later than August 15. The second and third installment payments must be postmarked no later than November 1 and February 1, respectively.

Second and third installment payments postmarked after their respective due date(s) are subject to a one-time late charge of $50 per fiscal year, which shall accompany the final payment.

The Florida Bar will send written notice by registered or certified mail to the last official address of each Florida Registered Paralegal whose renewal fee and late fee have not been paid under this rule by February 1. Upon failure to pay

renewal fees and any late charges under this rule by March 15, the individual's status as ~~an~~ Florida Registered Paralegal will be revoked.

Each Florida Registered Paralegal who elects to pay the annual renewal fee in installments under this rule may be charged an additional administrative fee to defray the costs of this activity as set by the Board of Governors.

**(g)  Renewal Fee Exemption for Activated Reserve Members of the Armed Services.**  Florida Registered Paralegals engaged in reserve military service in the Armed Forces of the United States who are called to active duty for 30 days or more during the bar's fiscal year are exempt from the payment of the annual renewal fee required under this rule.  For purposes of this rule, the Armed Forces of the United States includes the United States Army, Air Force, Navy, Marine Corps, Coast Guard, as well as the Army National Guard, Army Reserve, Navy Reserve, Marine Corps Reserve, the Air National Guard of the United States, the Air Force Reserve, and the Coast Guard Reserve.  Requests for an exemption must be made within 15 days before the date renewal fees are due each year or within 15 days of activation to duty of a reserve member.  To the extent renewal fees were paid despite qualifying for this exemption, such renewal fee will be reimbursed by The Florida Bar within 30 days of receipt of a Florida Registered Paralegal's request for exemption.  Within 30 days of leaving active duty status, the Florida Registered Paralegal must report to The Florida Bar that he or she is no longer on active duty status in the United States Armed Forces.

## 20-6.  CONTINUING EDUCATION
### RULE 20-6.1 GENERALLY

In order to maintain the status of Florida Registered Paralegal, a Florida Registered Paralegal must complete a minimum of 30 hours of continuing education every 3 years, 5 hours of which ~~shall~~must be in legal ethics or professionalism.  Courses approved for credit by The Florida Bar, the National Association of Legal Assistants (NALA), or the National Federation of Paralegal Associations (NFPA) will be deemed acceptable for purposes of this rule.  To be eligible for re-registration, if a Florida Registered Paralegal resigns or has had his or her status revoked but is otherwise eligible for re-registration, the Florida Registered Paralegal must complete at least 10 hours of continuing education for each year the Florida Registered Paralegal was previously registered. The continuing education hours must be completed prior to the re-registration application and be posted on The Florida Bar website within 30 days of the effective date of re-registration, otherwise the new registration will be revoked and

ineffective. Upon re-registration, the Florida Registered Paralegal will be given a new 3-year continuing education cycle.

## Comment

Continuing education is an important component of the Florida Registered Paralegal program and necessary to maintain the status of a Florida Registered Paralegal. If a Florida Registered Paralegal resigns or has had his or her status revoked at the end of a continuing education cycle without completing the necessary hours, the paralegal must show that he or she has completed a minimum of 10 hours of continuing education for each year of the immediately preceding term that the paralegal was registered. For example, if the paralegal was registered for 2 years, the paralegal must complete at least 20 hours of continuing education in order to re-register. The courses must be completed prior to the date the paralegal reapplies for Florida Registered Paralegal status. As an example, assume that a Florida Registered Paralegal was given a continuing education cycle that ran from January 1, 2011, to January 1, 2014, and the Florida Registered Paralegal resigned or had his or her status revoked in October 2013. If the paralegal reapplies for Florida Registered Paralegal status in February 2014, the paralegal must show 20 hours of continuing education credit completed between January 1, 2011, to January 1, 2014, to be eligible to re-register. Because a Florida Registered Paralegal must enter all course credits on The Florida Bar's website and access to the portion of the website where credits are posted is not available during the period the paralegal was not registered, the Florida Registered Paralegal will have 30 days after re-registration to enter the credits. Failure to timely enter the credits will result in the Florida Registered Paralegal's status being revoked. Upon re-registration, the Florida Registered Paralegal will be given a new continuing education cycle. The purpose of this rule is to ensure that a Florida Registered Paralegal continues his or her education. This is meant to avoid a situation where a Florida Registered Paralegal has not completed the continuing education requirement, resigns and then re-registers with a new 3-year cycle, having failed to complete the requisite hours when previously registered.

If a Florida Registered Paralegal resigns or has his or her status revoked during his or her continuing education cycle, the cycle will not reset. For example, assume a Florida Registered Paralegal has a continuing education cycle beginning January 1, 2011, and ending January 1, 2014. The Florida Registered Paralegal's status is revoked in October 2012, for failure to pay the annual renewal. If the paralegal reapplies and is re-registered in December 2012, the continuing education cycle will remain the same, and the Florida Registered Paralegal will have until January 1, 2014, to complete the necessary hours.